855 A.2d 642

KORMAN SUITES AT WILLOW SHORES, PLAINTIFFS,
v. KELSCH ASSOCIATES, DEFENDANTS.

Superior Court of New Jersey
Law Division, Special Civil Part,
Burlington County

Decided May 5, 2004.

*Robert P. Weishoff,* for plaintiff.

*Jerry M. Lonabaugh,* for defendant.

HOGAN, J.S.C.

In this case the plaintiff landlord is seeking a judgment of possession of leased premises against the defendant tenant pursuant to *N.J.S.A.* 2A:18–61.1(c), a section of the removal of residential tenant statute. A bench trial was conducted April 28, 2004. Below is the Court's decision.

The landlord owns a 16–unit apartment complex that it leases out for residential occupancy. The tenant is an organization that provides residential placement for developmentally disabled adults. It receives its funding from the Division of Development Disabilities in the New Jersey Department of Human Services. To further their goals, the organization enters into leases with landlords to house these individuals that are referred to it by the New Jersey agency. The nature of the disabilities vary, but include individuals who require twenty-four hour supervision as well as those who can live alone with limited oversight.

On June 8, 1999, the plaintiff and defendant entered into a twelve-month lease for apartment # 4139. At or about the same time the parties entered into five other leases for five additional units. All of these units were and are used to house such disabled individuals. The plaintiff's sole witness testified that she was the person who handled the lease transaction, and that other than understanding that the tenant/defendant would be having various individuals living in the rented premises, there was no discussion of the nature of the individuals. At one point she had communication with the tenant's contractor who was to make various improvements to the bathroom facilities to accommodate wheel chairs, but those improvements were never made.

The lease arrangement proceeded and the landlord last renewed the lease in June 2003.

The apartment in question was provided to R.V., an individual with certain disabilities who had been referred by the State of New Jersey.

This person was screened by the tenant/defendant who determined that the person did not require twenty-four hour supervision.[1] On or about November 7, 2003, R.V., without the knowledge of the tenant, entered into a vacant apartment owned by the landlord and not leased by the tenant, and allegedly started a fire that caused damage to the unit in the amount of $1,718.34.[2]

The defendant conducted its own review to determine what occurred, which included a report, P6 in evidence, indicating that R.V. told the plan coordinator that he had in fact started the fire, and that he had started an earlier fire in a dumpster two months earlier. The defendant had no knowledge of R.V.'s involvement

---

[1] Two of six units currently house twenty-four hour supervised persons.

[2] On April 20, 2004, R.V. was indicted for the alleged activity that led to the damage. While the indictment was entered in evidence, the Court does not accept the document as to the guilt or innocence of R.V. or as evidence that supports plaintiff's allegations that R.V. caused the damage. It is evidentiary for the limited purpose of demonstrating that he was in fact indicted.

with the earlier fire until his admission to the plan coordinator on November 14, 2003.

The tenant/defendant removed R.V. from the apartment to a new location with greater supervision. On December 16, 2003, the tenant sent a check to the plaintiff for $1,713.84 to pay for the damages that plaintiff had billed for.

However, on December 10, 2003, the plaintiff sent by ordinary and certified mail to the defendant a document entitled "Notice of Termination." This document stated the lease was terminated as of December 31, 2003, and it demanded possession by that date.

The reason given is as follows:

Your lease is terminated because (pursuant to *N.J.S.A.* 2A:18–61.1b, c, d, e(1)):

DESTRUCTION OF LANDLORD'S PROPERTY

In that on November 7, 2003, *you allowed and permitted* a resident residing in your rental unit to break in Apartment No. 4317 and set a fire. Damages from said fire are as follows: destroyed carpeting and padding, smoke damage to walls requiring prep and paint, burned queen-size quilts, vellux blankets, pillows, alarm clocks, queen-size mattress pads, queen size sheets. Total cost of damages-$1,718.34.

[*Emphasis added.*] [3]

It appears that the check that the defendant sent for the damages was in direct response to this notice.

The plaintiff commenced this action January 7, 2004, as evidenced by the Clerk's date stamp on the filed complaint.

The plaintiff in its pretrial brief, and initially at trial, argued that one basis for this possession action was a violation of various provisions of the written lease. However, at the conclusion of the trial, during closing arguments, the plaintiff abandoned the violation of the lease position and argued solely that the underlying basis that supports a judgment for possession is that the tenant "willfully or by reason of gross negligence caused or allowed destruction, damage or injury to the premises."

---

[3] As will be discussed there is no evidence that the defendant either allowed or permitted the alleged conduct of R.V.

The plaintiff failed to demonstrate by a preponderance of the evidence that the tenant/defendant either willfully or by reason of gross negligence caused injury to the plaintiff's premises.

*N.J.S.A.* 2A18–61.1(c) is the statute at issue. It states in relevant part: *No lessee or tenant or the assigns, under-tenants or legal representatives of such lessee or tenant may be removed by the Superior Court . . . except upon establishment of one of the following grounds as good cause:* . . .

   c.  *The person has willfully or by reason of gross negligence caused or allowed destruction, damage or injury to the premises.*

The "tenant" in this case was the signatory to the lease, Kelsch Associates, Inc. The description of R.V. in evidence is that he is a developmentally disabled adult person whose housing was supplied to him by the defendant and funded by the State of New Jersey. R.V. was his "own guardian" as stated by the defendant's witness. There is no evidence that the defendant was R.V.'s legal representative. As will be discussed, such developmentally disabled persons, who are not parties to a residential lease, are not in the context of a state funded residential placement program intended to be considered tenants or derivative of such tenancies for purposes of removal actions under *N.J.S.A.* 2A:18–61.1. R.V. did not sign the lease or have any relationship with the landlord other than his being assigned to live in the apartment that was rented by the defendant to house developmentally disabled persons. The plaintiff's witness testified that she had no knowledge as to who would reside at the apartment, and asked no questions of the defendant organization when they entered into the six leases in June of 1999. She apparently did not even ask the names of the residents who would occupy the apartments. The plaintiff's witness did become aware of the desire of defendants to make modifications to the bathroom facilities to accommodate wheelchairs. He stated concern to the defendant's contractors that any modifications must be removed as provided for in their lease. As previously indicated the modifications were not undertaken.

Under the terms of the lease between the parties, R.V. would best be described as a "permitted occupant" as set forth under

paragraph 21 of the lease, *Rules and Regulations.* Since the plaintiff abandoned the removal action on the grounds of violation of the lease under *N.J.S.A.* 2A:18–61.1e(1), even this description is not helpful.

Nor does the removal statute include a "permitted occupant" as one of those "persons" which can be the subject of an action for possession. Only a "lessee", "tenant" or the "assigns," or "undertenant" or "the legal representative of such lessee or tenant" can be the subject of a removal action in the Superior Court. *N.J.S.A.* 2A:18–61.1. R.V. is none of these.

Section c of the statute refers to the wrongdoer as "the person". This reference is found in many if not most of the statutory sections related to the grounds for removal under the act, such as sections a, b, c, d, e, f and j. Clearly, the reference to "person" is to the group described above as those who can be the subject of a removal action. However, such interpretation should not be so narrowly construed as to not include family members, invited guests, and even developmentally disabled persons placed in a residence by a tenant organization such as this. The Act is remedial legislation deserving of liberal construction. *447 Assocs. v. Miranda,* 115 *N.J.* 522, 559 *A.*2d 1362 (1989).

The plaintiff's burden therefore is to demonstrate by a preponderance of the evidence that the defendant Kelsch Associates "willfully or by reason of gross negligence caused or allowed destruction, damage or injury to the premises" by R.V.

Factually, plaintiff presented no evidence to show that the defendants knew or could have known that R.V. was going to damage the plaintiff's premises.

Even with R.V.'s admission that he started the fire,[4] without a showing by the plaintiffs of defendant's knowledge, acquiescence

---

[4] As to the admission that is related on the report in evidence, because of the fact of R.V.'s mental developmental disability there are questions as to the quality of the admission.

or gross negligence, to vicariously attach either willful intent or gross negligence to the defendant organization cannot be supported as a matter of law. There was no demonstration by the plaintiff via expert witness or otherwise that defendant violated any duty to properly supervise R.V. The evidence is to the contrary. That is, the testimony of the defendant's witness was that R.V. was screened by a "team" and determined to be able to reside alone without twenty-four hour supervision. While plaintiff's counsel raised the screening issue, it was raised in the context of cross-examination of defendant's witness who did not have the medical background necessary to provide meaningful testimony. The plaintiff offered no expertise or other evidence in its case-in-chief of the nature and breach of a duty to the landlord. So while counsel argues in his pretrial brief of the defendant's "duty" to make sure that the individuals placed in the rental unit will not in any manner endanger the health and welfare of other residents or the property of the Plaintiff, he failed to produce at trial evidence as to what the duty was, or factually how that duty was breached. There is no evidence presented as to what the tenant could have done to prevent the independent actions of R.V.

Plaintiff principally relies on the case of *Stuyvesant Assocs. v. Doe*, 221 *N.J.Super.* 340, 534 *A.*2d 448 (1987), to support the proposition that he is entitled to possession because of the potential harm to the landlord's property and to other tenants. In that case, as here, the Court was called upon to interpret the statutory requirement that the damage was willfully done or caused by gross negligence of the tenant.

Judge Fast granted a judgment of possession against an individual tenant who was schizophrenic on the basis that the tenant had the knowledge that when he failed to take his medicine he would have violent episodes. This was demonstrated by testimony from a psychiatrist that when the tenant was in control, he knew the significance of not taking his medication. There the tenant became violent and did damage to his apartment. The evidence was clear that the tenant/defendant could foresee harm if he did not

take his medication, and when he failed to medicate himself this constituted gross negligence, and thus satisfied the statute and provided the basis for removal.

The facts of the instant case are clearly distinguishable. First, the most glaring difference is that R.V., unlike John Doe, was not a tenant. Secondly, R.V. no longer resides at the defendant's apartment. Thirdly, there is no evidence in the record of the foreseeability of the future conduct of R.V. by the tenant prior to the incident.

Finally, what principally distinguishes this case from any other reported case is that the landlord is attempting to gain possession from a tenant for the actions of a developmentally disabled person who no longer resides at the premises leased by the landlord. Plaintiff's counsel argues that it makes no difference whether R.V. continues to reside at the premises or not, and that if it is shown that he did the damage, and there is every reason to believe that he did, then the Court must remove the tenant even if the disabled individual no longer resides there.

Counsel argues that it makes no difference whether the risk to the landlord and the other tenants has been removed. Such a strict interpretation, while perhaps appropriate in some cases where the one who does the damage is the actual tenant, is too onerous under these circumstances. The Court must consider and balance the interests between landlord and tenant when, as here, the individual is no longer present and thus no risk or threat to the landlord's property or to the remaining tenants is present, and the premises are rented by an organization that places developmentally disabled persons under a state-sponsored program.

It has been for some time the policy of the legislature to provide for the protection of the developmentally disabled. This is particularly true in the housing setting.

For example, in the context of the *Senior Citizens and Disabled Protected Tenancy Act,* 2A:18–61.23, the legislature found, "...*that it is in the public interest of the State to avoid the forced*

*eviction and the displacement of the handicapped wherever possible because of their limited mobility and the limited number of housing units which are suitable for their needs."*

As defined in that statute, the term "disabled" includes mental as well as physical impairment.

To now remove the tenant organization from possession of the apartment could very well displace a subsequent disabled person who has replaced R.V. at worst, and at the best, remove an opportunity to house such disabled individuals in the future. The public policy must be to encourage and protect the avenues for housing for these disabled individuals, particularly where there is minimal risk to the landlord and public. To allow the placement organization to be removed for the transgressions of a disabled individual when there has been no showing that the transgressions were preventable by the tenant organization, and where the tenant has paid the damages caused by the transgression, will make it even more difficult to find adequate and stable housing for such developmentally disabled persons, and is inconsistent with the anti-eviction act.

For the reasons set forth above, Judgment of Possession is denied and the plaintiff's complaint is dismissed with prejudice.

Defendant's counsel shall present an Order consistent with this decision.