ROSE R. TARNOW, PLAINTIFF-RESPONDENT, v. HUDSON AND MANHATTAN RAILROAD COMPANY, A CORPORATION, DEFENDANT-APPELLANT.

Submitted May 3, 1938—Decided August 10, 1938.

Before Justices TRENCHARD, PARKER and PERSKIE.

For the appellant, *Collins & Corbin* (*Edward A. Markley and John F. Leonard,* of counsel).

For the respondent, *William L. Greenbaum.*

The opinion of the court was delivered by

PARKER, J. The case for the plaintiff was that she and a woman friend were passengers on a train of the defendant bound from Journal Square in Jersey City to the Hudson Terminal in New York, at which point all New York passengers are discharged on one side of the train, and passengers for New Jersey are admitted on the other. The doors are sliding doors, electrically operated by the conductor or guard. Plaintiff and her friend were the last two to leave the car. Plaintiff safely stepped on the platform into a crowd of passengers; her companion behind her was just passing through the door when it suddenly closed with her body only partly through it. She screamed, plaintiff turned at once to help her, and as she did so the door was suddenly opened, and the friend, Miss Kravetsky, fell toward plaintiff and her elbow struck plaintiff's left breast, causing the injuries for which she sued the defendant company. Defendant demanded a jury, which was impaneled and sworn, to the satisfaction of both parties so far as appears in the case; and a verdict of $500 was returned for plaintiff, resulting in a judgment from which this appeal is taken.

The first principal ground of reversal is that there was error in refusing to nonsuit, and this for five reasons stated in the brief. Of these the first three are (a) no proof of negligence as alleged in the state of demand, (b) no proof of negligence that was the proximate cause of the injury, and in connection with this (e) that the injury was caused by the intervening act of a third person, which amounts to much the same thing.

We consider that on the evidence the jury were plainly entitled to find that it was an act of negligence for the defendant's servant to close the door while a passenger was passing

through it, and that this set in motion a chain of causation which led directly to the plaintiff's injury without any intervening negligence of other parties. *Kuhn* v. *Jewell,* 32 *N. J. Eq.* 647; *Delaware, Lackawanna and Western Railroad Co.* v. *Salmon,* 39 *N. J. L.* 299; *Pyers* v. *Tiers,* 89 *Id.* 520. We conclude that the nonsuit was properly denied. We do not understand that it is claimed that Miss Kravetsky committed any act of negligence causing injury to the plaintiff, but if that claim is made, the question was clearly for the jury.

Grounds (c) and (d) are that plaintiff was guilty of contributory negligence, and that she assumed the risk. At best it was for the jury to say whether she assumed the risk of Miss Kravetsky falling against her; and the general rule seems to be well settled that contributory negligence is not to be imputed as a court question, to one who exposes himself to danger of injury in order to rescue another from imminent peril. 45 *C. J.* 966; 20 *R. C. L.* 131; *Wagner* v. *International Railway Co.,* 232 *N. Y.* 176. We repeat that the nonsuit was rightly denied; and the same considerations apply to the motion to direct a verdict.

The next section of the brief for appellant relates to rulings on the admission of evidence.

(a) Defendant's trainman, identified by testimony as the one that caused the door to close, testified for defendant that no passenger on his train was caught in a door; and went on to say that after the company investigator came to interrogate him about plaintiff's claim he remembered two young ladies being the last passengers to get off the train and that "they were carrying on, I guess in a foolish prank, I would say, and they got off the train and after they got off the train I closed the doors." After giving this testimony he was asked by defendant's counsel: "*Q.* What are your duties relative to an accident, Mr. Wagner?" This was objected to and excluded, and the exclusion is claimed to be error, on the theory that if he had been allowed to say that his duty was to report any accident (and, as he did say, that he had made no report) this would go to show that no accident had occurred. We need not pass on the point, because assuming

technical error, it was harmless, as the witness repeatedly testified that he made no statement; that there was nó accident; there was no accident to make a statement on; the clear inference being that if there had been an accident there would have been a statement; but no accident having happened, no statement was made.

(b) Defendant's investigator testified that he had interrogated the trainman Wagner about the claim, and noted down what he said, in writing up his report. This last was in reply to plaintiff's attorney, who made the witness his own for the nonce. Defendant's attorney then asked: "*Q*. And did Mr. Wagner tell you that he didn't have an accident?" This was objected to and excluded. It is now urged that it was proper cross-examination. However, it was clearly hearsay, and therefore properly excluded.

The next point is that the court erroneously refused to permit defendant's counsel to submit a request to charge. As counsel for plaintiff was summing up, there was a good deal of interruption from counsel for the appellant ,and a colloquy with the court, much of which is reproduced in the stenographic transcript. Plaintiff's counsel appears to have undertaken to discuss the law in his address to the jury, and was told by the court that the latter would take care of that. Then in the course of the summing up by plaintiff's counsel, counsel for the defendant stated to the court that "he had a request to make." The court replied that he was too late. Counsel then said, "it just came to my attention. Will your honor, in view of the fact that I have a record here, permit me to make my request at this time? I am sorry that I have to do this. I take an exception to your honor's ruling refusing to permit me to make the request pertaining to counsel's remarks." The court allowed the exception, and counsel for plaintiff continued his summation.

The argument now seems to be that it was error for the court to refuse to allow the counsel for the defendant, while his opponent was addressing the jury, to interrupt with some sort of a request to the court to charge the jury. Obviously this was no time for the submission or consideration of any

such request to charge. The well settled and well understood rule is that requests to charge should be proffered in writing and generally at or before the close of the evidence, and before the beginning of the argument. *Dunne* v. *Jersey City Galvanizing Co.,* 73 *N. J. L.* 586.

No request in writing was submitted at any time, but after counsel for the plaintiff had concluded, the counsel for appellant stated to the court that, because of certain remarks of his opponent, he felt under the circumstances that he must ask the court "in the charge to the jury, to explain that situation to them, that a statement by the investigator relative to his investigation would not be proper evidence." The judge refused this, on the ground, apparently, that he had stated at the time of denying a motion for direction of verdict that if either of the parties had any requests to charge, the court would like to have them at that time.

If something occurs during the argument which counsel deems necessary to have noticed in the charge, the rule is properly relaxed with regard to the time of presentation of a request, but we think that the requirement that the request should be in writing remains, unless for some special reason, such as lack of time or the like, it is impracticable to put the request in writing. *Ceccomancino* v. *D'Onofrio,* 111 *N. J. L.* 494, 499. It is true that the court did not specifically take this ground in refusing to entertain the request, but the ground was a valid one, and so far as we can judge from a reading of the case, there was ample time for defendant's counsel to commit to writing the request, which was very short, and hand it to the judge before the charge was begun. This he did not do; and therefore we think he can take nothing by his exception.

The fourth main point is that there was error in instructing the jury that if they found as a fact that the door was suddenly closed, there would arise a presumption that it had been negligently operated by an employe of defendant. The argument on this point seems to be that the injury to the plaintiff did not occur because of the closing of the door.

This, it will be seen, is in substance a repetition of the point relating to proximate cause. We see no merit in it.

The fifth main point is (a) that the court denied a motion to declare a mistrial "on the ground that that juror [No. 7] unbeknown to the defendant, when he was picked, was apparently very hard of hearing." This was the language of the motion; and (b) that the court refused the request of counsel to interrogate the juror "to ascertain his physical fitness, as to his hearing."

These motions were made after the jury had come in and the foreman had reported a verdict in favor of "the defendant" for the full amount of $500. The court, sensing a case of heterophemy, asked who was meant by "the defendant" and the answer was "Rose Tarnow." The judge then polled the jury of his own motion, and when No. 7 was reached, he failed to answer the question, and the following colloquy took place:

"The sergeant-at-arms (addressing Juror Number 7, John F. Laughlin) : How much for the plaintiff? The court: Did you hear what was said? Mr. Leonard: I object to the next juror telling him. The Court: What do you say, Mr. Laughlin? The Court: We have asked you whether it should be a verdict in favor of the plaintiff in the sum of $500. What do you say? Juror Number 7 (John F. Laughlin) : I am in favor of the verdict. The Court: What verdict? Juror Number 7 (John F. Laughlin) : This verdict here that is fetched up in this case. The Court: For whom? Juror Number 7 (John F. Laughlin) : I don't know the lady's name. I forget now. The Court: For how much? Juror Number 7 (John F. Laughlin) : $100 I was figuring on. The Court: The rest of them said $500. Juror Number 7 (John F. Laughlin) : Well, I could say that, too, whatever the other parties say."

The court refused to accept the verdict at that point, and sent the jury back to reconsider; and following this, the motion for a mistrial was made, on the sole ground, as already noted, that the juror was deaf, and that defendant's counsel did not know it when he was drawn and sworn without objec-

tion. We think there was no error in denying the motion. The time to ascertain the deafness of the juror was before he was sworn. As we read the opinion of the late Mr. Justice Van Syckel in *Dickerson* v. *North Jersey Street Railroad Co., 68 N. J. L. 45*, inability to understand the English language does not require a verdict to be set aside, and by analogy it would seem that deafness (not discovered before the juror was sworn, and which in this case was not total) should not require a discharge of the jury and a new trial. By the act of 1911 (*Pamph. L., p. 220; Rev. Stat.* 1937, 2:92-4) a party or his attorney may question any juror before he is sworn, for certain purposes laid down in the act, among them to ascertain whether the juror is impartial and without interest in the result of the suit, or indeed for any information to enable the party to interpose a peremptory challenge. Obviously, no questions were then asked of this juror by counsel, for if there had been any colloquy at all, the deafness would have been obvious. The jury was demanded and accepted by the defendant, and if counsel did nothing before acceptance to test the availability of the juror, it was certainly no error on the part of the trial court to refuse to discharge the jury at the end of the trial; particularly as he seems to have heard and intelligently answered questions put to him by the judge, which justified the latter in holding, as he did, that there was no evidence from which it could be determined that he could not hear.

We conclude that none of the grounds of reversal is well taken; and the judgment will accordingly be affirmed.