721 A.2d 1000 (1998)
Douglas SALTSMAN, Plaintiff-Appellant,
v.
Michael J. CORAZO, Paul L. Masciocchi, Albert and Elizabeth Giannone, Defendants, and
John J. Eichman, Peter Midiri, Josephine Midiri, Charles Verdi, Nicki Jeff, Inc., d/b/a The Greens At Delran, a New Jersey Corporation, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued October 27, 1998.
Decided December 29, 1998.
*1002 Betsy Bisset, Berlin, for plaintiff-appellant (Maressa, Goldstein, Birsner, Patterson, Drinkwater & Oddo, attorneys; Benjamin Goldstein, on the brief).
Stuart M. Goldstein, Philadelphia, PA, for defendants-respondents (Hollstein, Keating, Cattell, Johnson & Goldstein, attorneys; Mr. Goldstein, on the brief).
Before Judges MUIR, Jr., KEEFE and COBURN.
*1001 The opinion of the court was delivered by KEEFE, J.A.D.
Plaintiff Doug Saltsman appeals from the entry of summary judgment in favor of defendants The Greens at Delran ("The Greens"), Nicki Jeff, Inc., John J. Eichman, Peter and Josephine Midiri, and Charles Verdi. The issues presented are whether plaintiff has demonstrated a genuine issue of fact concerning defendants' duty to provide security on the premises where he was injured, and whether the rescue doctrine applies to the facts of this case.
Because this appeal arises from the entry of summary judgment, we view the facts in a light most favorable to plaintiff. Brill v. Guardian Life Ins. Co., 142 N.J. 520, 523, 666 A.2d 146 (1995). The Greens is a multi-acre entertainment complex consisting of batting cages, a miniature golf course, a golf driving range, bumper cars, and a video arcade. It is owned by a partnership whose operating entity is defendant Nicki Jeff, Inc. Defendant John J. Eichman was an officer of the corporation and a partner in the general partnership. Defendants Peter and Josephine Midiri were the owners and landlords of the property on which The Greens is located. Defendant Charles Verdi was the manager of The Greens at the time relevant to this suit. Part of his duties as manager required that he enforce The Greens' regulations concerning conduct on the premises. Plaintiff was a social acquaintance of Verdi.
On June 6, 1993, plaintiff went to The Greens with his girlfriend, Kelly McShaw, and her son. According to plaintiff, the purpose of the visit was two-fold: for Kelly's son to use the batting cages and other equipment on the premises and for plaintiff to invite Verdi and his parents to a show. Shortly after plaintiff arrived, defendant Michael Corazo, who was at the time using a batting cage with defendant Paul Masciocchi, was observed bringing cups of beer onto the premises from the parking lot where he had parked his vehicle. The Greens had a policy prohibiting alcoholic beverages on the premises. Upon observing the violation, Verdi approached Corazo and Masciocchi and asked them to leave. They responded by becoming verbally abusive toward Verdi. Verdi then grabbed the cup of beer from the table where it had been placed and went to the office to call the police. He was followed there by Corazo and Masciocchi. While in the process of calling the police, Masciocchi "slammed" the cup of beer into Verdi's face.
Corazo and Masciocchi then left the building and entered the parking lot, where they were joined by Corazo's sister and a female cousin who had accompanied them to The Greens. Verdi followed Corazo and Masciocchi into the parking lot for the purpose of recording their vehicle's license plate number. Verdi and the foursome exchanged words, which eventually led to a physical scuffle between Verdi and Masciocchi. Verdi claimed that the physical assault was provoked by his effort to obtain the license plate number from the vehicle. Masciocchi, however, claimed that the physical encounter occurred because Verdi pushed him after exclaiming that he should take his "whorey *1003 girlfriend" and leave the premises. Corazo and his sister joined the fray by jumping onto Verdi's back.
Plaintiff, who had observed the foregoing events, decided to assist Verdi because "[t]hree on one, just seemed a little unfair." Corazo, apparently upset by plaintiff's intervention, reacted by attacking plaintiff with a golf club that he ripped out of the hands of a young female bystander. Plaintiff was seriously injured as a result of the attack.
Plaintiff instituted suit seeking compensation for his injuries against the foregoing defendants. He also sued defendants Albert and Elizabeth Giannone, the hosts of the party where Corazo and Masciocchi had been drinking before going to The Greens. Corazo apparently did not answer the complaint. On October 28, 1996, summary judgment was entered in favor of The Greens, Nicki Jeff, Inc., Eichman, Verdi, and the Midiris. Plaintiff ultimately settled with defendants Masciocchi and the Giannones. This appeal was then taken.[1]

I.
Relying essentially on Clohesy v. Food Circus Supermarkets, Inc., 149 N.J. 496, 694 A.2d 1017 (1997), plaintiff contends that the trial judge erred in holding that, because The Greens had no history of violence, it had no duty to provide security on the premises in addition to Verdi's presence, or to protect its invitees against criminal attack. In deference to the trial judge, we note that Clohesy, supra, was decided eight months after summary judgment was entered in this case. Nonetheless, even applying the Clohesy principles, we find no error in the trial judge's decision on this issue.
Clohesy, supra, held that in determining whether the operator of a business has a duty to protect its customers against criminal incidents, the foreseeability of risk stemming from such criminal conduct depends on an evaluation of the "totality of the circumstances." Id. at 516, 694 A.2d 1017. The absence of similar criminal activity on the premises is one of the circumstances to be considered but is not determinative. Id. at 516-17, 694 A.2d 1017. Other relevant circumstances include criminal acts that occurred in proximity to the premises, as well as:
the property's size and location; the absence of any security; the architectural design of the building in relation to the area of the parking lot where the crime occurred; the size of the parking lot; the type of business defendant operates; the nature and circumstances of nearby businesses; and the increasing level of crime in the general neighborhood.

[Id. at 517, 694 A.2d 1017.]
Applying the facts from the record before us in a light most favorable to plaintiff requires the same result arrived at by the trial judge. While Verdi estimated in his deposition that he had to eject one patron a month, the reasons for the ejections were minor infractions of The Greens' rules, such as walking onto the driving range, playing without paying, or bringing their own golf balls to play miniature golf. A sign was posted in the lobby prohibiting the use of drugs or alcohol on the premises. There had never been an ejection for that reason nor did Verdi ever have to call the police prior to the incident involving Corazo and Masciocchi. Further, there is no evidence that the surrounding businesses had experienced criminal activity. Plaintiff has offered no evidence disputing those facts.
As noted earlier, The Greens is a multi-acre facility that caters to families and children for sport-related activities. There is nothing about the nature of the business suggesting foreseeability of violent behavior. The fact that the fence surrounding the premises might permit unauthorized access to the recreation area without passing through the main building is insufficient to draw any adverse inference concerning risks to patrons from criminal activity. Plaintiff also makes much of the fact that there could have been as many as six hundred people at The Greens on the Sunday in question, and *1004 that The Greens normally hired an additional security officer on Fridays and Saturdays once schools in the area recessed for the summer. Nonetheless, there is no indication that The Greens was crowded at the time of this event, or that the number of patrons in some way contributed to Verdi's inability to control the conduct of Corazo and Masciocchi.
It is important to note that the Clohesy Court did not hold that the circumstances in that case required the defendant business to provide security guards. Rather, the Court simply stated "that the duty to provide security may include a security guard as well as any other security system or warnings deemed reasonable under all of the circumstances." Id. at 520, 694 A.2d 1017. Here, plaintiff specifically maintains that The Greens had a duty to provide security guards in addition to Verdi who functioned essentially in that capacity. However, even if additional security personnel had been on the premises on the Sunday in question, there is no indication that the incident would not have occurred as it did. As the Clohesy Court recognized, security guards must serve "limited role[s]." Id. at 519, 694 A.2d 1017. They should not act as police officers would act in arresting offenders. Rather, their only function is "to report suspicious criminal activities to the police and thus help [ ] avert criminal conduct.... Guards serve as a deterrent to crime and assist the police as would any other citizen." Ibid. In this case, Corazo and Masciocchi knew that Verdi had the authority to enforce The Greens' regulations and were aware that he had called the police for assistance. Their assaultive behavior occurred because of Verdi's authority, not because there was an absence of it. Moreover, Verdi reported their behavior to the police and requested help.

II.
Plaintiff argues, alternatively, that Verdi's actions incited the altercation with Masciocchi and Corazo and, in doing so, he breached a duty of care owed to plaintiff. Plaintiff contends that it was foreseeable that the altercation would result in injury to a third party and that the trial judge's reliance on Genovay v. Fox, 50 N.J.Super. 538, 143 A.2d 229 (App.Div.1958), rev'd, 29 N.J. 436, 149 A.2d 212 (1959), was misplaced.
Defendants respond to plaintiff's argument in several ways. They contend in their brief that "[p]laintiff's sworn testimony that [Masciocchi], not [Verdi], was the violent factor and actually caused the fight constitutes a `judicial admission' which precludes plaintiff from offering contrary evidence to refute such testimony." The argument is without merit. As defendants themselves concede, a judicial admission is:
An express waiver made in court or preparatory to trial by the party or his attorney conceding for the purposes of the trial that the truth of some alleged fact, has the effect of a confessory pleading, in that the fact is thereafter to be taken for granted; so that the one party need offer no evidence to prove it and the other is not allowed to disprove it.
[Chaffee v. Kraft Gen. Foods, Inc., 886 F.Supp. 1164, 1168 (D.N.J.1995) (quoting 9 Wigmore on Evidence § 2588 (Chadbourn rev.1981)).]
The record is devoid of any such express waiver. The fact that plaintiff's statement is helpful to Verdi's version of what occurred is no more than an admission that can be used at the time of trial. Ibid. Plaintiff is not barred from calling Masciocchi as a witness merely because they have different perceptions of the same event. Indeed, a close examination of plaintiff's statement to the police raises some doubt as to whether he actually heard and saw everything that led to the physical altercation between Masciocchi and Verdi. Moreover, although Masciocchi's version of the events may be ultimately rejected by a jury as not credible, it cannot be rejected by us as a matter of law.
Defendants also contend that Genovay, supra, is indistinguishable from this case and compels the result arrived at by the trial judge. In Genovay, supra, an armed robber fatally shot a patron of a business establishment who was attempting to avert an armed robbery. 50 N.J.Super. at 546-48, 143 A.2d 229. Another patron, Genovay, who was a friend of the person that had been *1005 shot, was also shot and seriously wounded when he jumped on the robber to protect his friend. Id. at 548, 143 A.2d 229. Genovay sued the owner of the business for his injuries. When the matter ultimately reached the Supreme Court, the parties by agreement phrased the issue to be "whether the evidence and the inferences therefrom are susceptible of the conclusion that during the holdup defendant engaged in a course of conduct designed to incite or suggest resistance to, or attack upon, the armed bandit by his business invitees, one of whom was the plaintiff." Genovay, supra, 29 N.J. at 437-38, 149 A.2d 212. In the context of the issue as phrased, the Court held that there was no factual basis upon which a jury could find that the defendant's actions during the course of the robbery could be found to have incited its patrons to attack the robber or offer any resistance to the robbery. Accordingly, the Court reinstated the trial court's dismissal of the claim against the defendant and reversed the Appellate Division's determination that a fact issue was presented. Id. at 438, 149 A.2d 212. The implication of the Court's holding is that if the answer to the question as phrased by the parties was in the affirmative, a jury question would have been presented as to the defendant's negligence.
The facts in this case are distinguishable from those in Genovay, supra. In this case, unlike Genovay, supra, a jury could find that the business proprietor (Verdi) negligently instigated the altercation with Masciocchi by either verbally insulting his female companions, or, according to Masciocchi, by throwing the first punch. As the Clohesy Court noted, "defendant was obligated not to engage in any affirmative actions or omissions that would unreasonably create or increase the risk of injury to [patrons] from the criminal activity of a third party." Clohesy, supra, 149 N.J. at 516, 694 A.2d 1017. Plaintiff's status on The Greens was at least that of an invitee to whom reasonable care was owed by defendants, inasmuch as his friend's son was going to utilize the recreational facility and plaintiff was going to confer a benefit on Verdi by inviting him to a show. See Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 433, 625 A.2d 1110 (1993) (stating that "[a]n owner or possessor of property owes a higher degree of care to the business invitee because that person has been invited on the premises for purposes of the owner that often are commercial or business related"). It must be remembered that plaintiff was also a friend of Verdi. Thus, under the Genovay principles, the question is whether it was foreseeable from Verdi's standpoint that plaintiff would intervene on his behalf and thus be exposed to a risk of harm that Verdi's conduct at least in part created.
Genovay, supra, however, does not require the analysis of defendant's duty in such circumstances to be dependent on the plaintiff's status on the premises at the time of injury. It bears repeating that it was the parties who phrased the issue by agreement and requested the case to be decided in that framework. And in that context the Court was careful to observe that "[s]ince the parties agree that [the issue as phrased by them] expresses the controlling test to be applied in situations such as the present one we accept it for the disposition of this case." Genovay, supra, 29 N.J. at 438, 149 A.2d 212 (emphasis added). Indeed, in premises liability matters, determining the duty of a defendant without relying on the status of the parties, inter sese, accords with the Supreme Court's current view. Hopkins, supra, 132 N.J. at 435-39, 625 A.2d 1110.
Accordingly, we are of the view that defendants' liability is more appropriately analyzed in the context of the rescue doctrine where the status of the parties, though relevant, is not a determinative factor. As Justice Cardozo stated long ago, "[d]anger invites rescue." Wagner v. International Ry. Co., 232 N.Y. 176, 133 N.E. 437, 437 (Ct.App.N.Y.1921). Originally, the rescue doctrine was created to prevent a plaintiff from being found contributorily negligent as a matter of law when he voluntarily placed himself in danger so as to save another from peril. See id. 133 N.E. at 437-38. The doctrine, in its traditional form, also created a duty of care on the part of a person who through his own negligence placed a third party in a situation of imminent peril that invited the plaintiff rescuer to intervene. Provenzo v. Sam, 23 N.Y.2d 256, 296 N.Y.S.2d 322, 244 N.E.2d 26, 28 (Ct.App.N.Y. *1006 1968). In such cases, the victim is blameless, and suit is brought by the plaintiff rescuer against the party who created the peril. Defendants contend in their brief that the rescue doctrine is limited to that factual scenario, and thus, plaintiff could only bring suit against Masciocchi under the rescue doctrine, not Verdi. We disagree.
The doctrine has been expanded to circumstances where a person is injured in undertaking a rescue and seeks recovery for injuries from the victim whose own negligence helped create the situation necessitating the rescue. Ibid. In that context, the rescue doctrine establishes not only the victim defendant's duty to the plaintiff, but also that the victim defendant's negligence in creating the rescue-inducing peril was a legal cause of the injury for which recovery is sought, although it may not have been the cause in fact of such injury. Jeffrey F. Ghent, Annotation, Rescue Doctrine: Liability of One Who Negligently Causes Motor Vehicle Accident for Injuries to Person Subsequently Attempting to Rescue Persons or Property, 73 A.L.R.4th 737, 740 (1989).
The rescue doctrine has received general recognition in New Jersey and "has long been a part of our State's social fabric." Burns v. Market Transition Facility, 281 N.J.Super. 304, 310, 657 A.2d 472 (App.Div. 1995); see also Layden v. Goodyear Tire & Rubber Co., 129 N.J.L. 54, 58, 28 A.2d 96 (E. & A.1942); Eyrich for Eyrich v. Dam, 193 N.J.Super. 244, 256, 473 A.2d 539 (App.Div.), certif. denied, 97 N.J. 583, 483 A.2d 127 (1984); Harrison v. Middlesex Water Co., 158 N.J.Super. 368, 376, 386 A.2d 405 (App. Div.1978), rev'd on other grounds, 80 N.J. 391, 403 A.2d 910 (1979); Cafone v. Spiniello Constr. Co., 42 N.J.Super. 590, 602-03, 127 A.2d 441 (App.Div.1956), certif. denied, 23 N.J. 258, 128 A.2d 753 (1957); Tarnow v. Hudson & Manhattan R. Co., 120 N.J.L. 505, 507, 1 A.2d 73 (N.J.Sup.Ct.1938), aff'd, 121 N.J.L. 522, 3 A.2d 570 (E. & A.1939). These cases, however, address situations in which the rescuer brought suit against the party whose negligence placed the victim in a position of imminent peril so as to invite the rescue. In the only New Jersey case that addresses the doctrine in the context of a suit brought by the injured rescuer against the rescued party whose own negligence created the peril, the Court of Errors and Appeals considered the issue in the context of the plaintiff's contributory negligence, not the defendant's duty to the plaintiff. Butler v. Jersey Coast News Co., 109 N.J.L. 255, 160 A. 659 (E. & A.1932). The Court found the doctrine to be inapplicable because the peril actually encountered by the plaintiff was not so obvious as to require the application of the doctrine to protect the plaintiff against a finding of contributory negligence. Id. at 257-58, 160 A. 659. There was no suggestion by the Butler Court, however, that the plaintiff's theory of recovery would not be embraced by this state in the appropriate factual context. Indeed, the application of the doctrine against the party rescued where that party's negligence has in part created the need for intervention has been accepted in almost every jurisdiction that has addressed the subject. See W.C. Crais III, Annotation, Rescue Doctrine: Negligence and Contributory Negligence in Suit by Rescuer Against Rescued Person, 4 A.L.R.3d 558 (1965); see also Restatement (Second) of Torts § 445 comment d (1965) (noting that "[t]he rule stated in this Section applies equally where the conduct of the actor has created a danger only to himself, if at the time of such conduct he should reasonably anticipate that others might attempt to rescue him from his self-created peril, and sustain harm in doing so"), and § 472 comment a (stating that "[a] plaintiff who intervenes to rescue a third person is not affected by the fact that the third person's own negligence has been a legally contributing cause in putting him in peril").
Thus, we find no impediment to the application of the rescue doctrine in New Jersey to situations where the rescuer plaintiff sues the rescued victim who is either completely, or partially, at fault for creating the peril that invited the rescue. Therefore, we remand the matter for a jury determination as to whether Verdi negligently instigated the altercation with Masciocchi by either insulting his female companions, throwing the first punch, or both. If the jury finds Verdi blameworthy in this respect, it must *1007 then determine whether Verdi could have reasonably anticipated that plaintiff, a social acquaintance and business invitee, might intervene to rescue him from the assault which his negligence at least partially created. In such circumstances, because the intervention itself cannot be deemed to be negligent, plaintiff's recovery is discounted only if the jury determines that he acted unreasonably during his rescue effort. Blackburn v. Broad St. Baptist Church, 305 N.J.Super. 541, 545, 702 A.2d 1331 (App.Div.1997).
Reversed and remanded.
NOTES
[1] There is no indication that a default judgment was entered against Corazo. Nor is there any indication that the complaint against him has been dismissed. The appeal is, therefore, interlocutory. Nonetheless, we hereby grant leave to appeal and address the merits.