**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3431-19

ANN SAMOLYK and
JOHN SAMOLYK,

     Plaintiffs-Appellants,

v.

DOROTHY BERTHE, III,

     Defendant,

and

ILONA DESTEFANIS and
ROBERT DESTEFANIS,

     Defendants-Respondents.

_____

        Submitted March 15, 2021 – Decided June 2, 2021

        Before Judges Messano, Suter and Smith.

        On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-1723-19.

        The Wright Law Firm, attorneys for appellants (William D. Wright, on the briefs).

Burke & Potenza, attorneys for respondents (John Burke, of counsel and on the brief).

PER CURIAM

Plaintiff Ann Samolyk almost drowned when she tried to rescue a dog owned by defendants Ilona and Robert Destefanis that wandered into a canal or "lagoon" that separated plaintiff's and defendants' homes in Forked River. Ann's husband John filed this complaint as her guardian ad litem (GAL) alleging defendants' negligence and asserting their liability under the "rescue doctrine."[1]

After defendants filed their answer, the Law Division judge managing the case entered an order that required them to file a "dispositive motion" soon after paper discovery was completed and before any depositions or the service of any expert reports. Defendants filed their summary judgment motion, and plaintiff

---

[1] We use the first names of plaintiffs to avoid confusion. We intend no disrespect by this informality. Because John's claim was limited to a loss of consortium and is wholly derivative of Ann's cause of action, we use the singular "plaintiff" throughout the balance of this opinion except when necessary to distinguish between Ann and John.

The complaint also named Dorothy Berthe III as a defendant, without any description of the alleged role she played in the litigation. Plaintiffs subsequently entered a stipulation of dismissal without prejudice as to Berthe. In their Case Information Statement, however, plaintiffs state they "have agreed that [Berthe] is not responsible for plaintiff['s] injuries. . . . We do not intend to revive the claims against [Berthe]." We deem the appeal from the two orders entered by the Law Division judge that are identified in the Notice of Appeal to be final, therefore, and reviewable as of right. R. 2:2-3(a)(1).

A-3431-19

filed a cross-motion for partial summary judgment, seeking an order declaring "[t]he rescue doctrine applies to personal property, including pets."  A second judge considered the parties' briefs and oral arguments and entered two orders: one denied plaintiff's motion and the second granted defendants' motion and dismissed the complaint.  Plaintiff now appeals.

I.

We understand the first judge's well-intentioned case management order. The rescue doctrine, which application was critical to plaintiff's causes of action, has never been extended in New Jersey to the rescue of another's property, real or personal.  Seeing this as a purely legal issue, the judge ordered defendants to file a dispositive motion after minimal discovery.  Of course, the result was a significantly limited summary judgment motion record, which revealed the following.

Around 6:35 p.m. on July 13, 2017, Ann heard someone calling out that their dog was in the canal and needed help.  She jumped in.  Defendants were having dinner with their son and some friends when they realized their dog, Beau, a seventy-nine-pound boxer, was missing from their fenced-in yard. Defendants searched for Beau, learned he had fallen or jumped into the canal, walked into the backyard of a neighbor two doors away and were able to pull

3

the dog out of the water. Defendants denied ever requesting the assistance of Ann or anyone else.

Defendants called 911 when their son alerted them to the fact that "a woman" needed assistance. Reports in the record reveal that by the time police arrived, Ann was unconscious on a "floating dock," and the fire department was on scene performing CPR. Ann regained consciousness and was transported by ambulance to a nearby hospital. Although no medical records were before the motion judge and none are before us, it is alleged that Ann suffered "debilitating brain damage" necessitating the appointment of John as her GAL.

During oral argument on the motions, plaintiff's counsel argued defendants "negligently allowed their dog to be in peril," which "invited the risk of [Ann] jumping in to attempt to save it." However, he agreed with defense counsel that "[w]ithout the rescue doctrine, there's no causal connection between . . . the conduct on the defendants' part and the plaintiff's action in jumping into the lagoon."

The judge concluded "[t]he rescue doctrine clearly does not apply. . . . [The dog is] property rather than [a] person[]. . . . [I]t was a conscious determination of the [L]egislature to provide an umbrella of safety to those who

risk their own life to preserve another.[2]  That's not what happened here."  He granted defendants' motion "on the basis that the rescue doctrine does not apply."

## II.

When reviewing the grant of summary judgment, we limit our review to the motion record before the Law Division judge.  Ji v. Palmer, 333 N.J. Super. 451, 463–64 (App. Div. 2000) (citing Bilotti v. Accurate Forming Corp., 39 N.J. 184, 188 (1963)).  We apply the "same standard as the motion judge."  Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016) (quoting Bhagat v. Bhagat, 217 N.J. 22, 38 (2014)).

> That standard mandates that summary judgment be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law."
>
> [Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016) (quoting R. 4:46-2(c)).]

---

[2]  The judge did not cite the statute or statutes to which he referred as evidencing the Legislature's intent, nor did either party reference any statute during oral argument or cite any statute in their briefs on appeal.  Perhaps the judge was referencing the immunities provided by N.J.S.A. 2A:62A-1 to -1.3, which have little relevance to the facts presented.

Like "the trial court[, we] must 'consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). We owe no deference to the motion judge's legal analysis or interpretation of a statute. Palisades At Fort Lee Condo. Ass'n v. 100 Old Palisade, LLC, 230 N.J. 427, 442 (2017) (citing Zabilowicz v. Kelsey, 200 N.J. 507, 512 (2009)).

"The rescue doctrine has received general recognition in New Jersey and 'has long been a part of our State's social fabric.'" Saltsman v. Corazo, 317 N.J. Super. 237, 248 (App. Div. 1998) (quoting Burns v. Mkt. Transition Facility, 281 N.J. Super. 304, 310 (App. Div. 1995)). The doctrine "originated as a response to the argument that one who rushed into danger to rescue another and was injured in the effort was contributorily negligent for his own injuries and therefore was barred from recovering for those injuries in tort." Estate of Desir ex rel. Estiverne v. Vertus, 214 N.J. 303, 319 (2013) (citing Saltsman, 317 N.J. Super. at 247).

Most often, "[t]he doctrine permits the injured rescuer to maintain a cause of action against the one whose negligence placed the victim in imminent danger, because it is that negligence that has given rise to the intervention of the rescuer." Id. at 320 (citing Eyrich ex rel. Eyrich v. Dam, 193 N.J. Super. 244, 256 (App. Div. 1984)). If the doctrine does not apply, courts "must engage in the traditional, comprehensive analysis of whether a duty is owed" to the plaintiff-rescuer by the defendant. Id. at 322 (citing Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 439 (1993)).

Plaintiff conceded at oral argument before the Law Division judge that absent application of the rescue doctrine, there was no "causal connection" between defendants' actions and Ann's decision to enter the canal. Before us, plaintiff makes no argument that defendants owed a duty to Ann under the circumstances, and, considering the factors cited by the Court in Hopkins, we conclude that defendants owed no duty to Ann or others to restrain Beau from jumping into the canal. See Hopkins,132 N.J. at 439 (listing four factors to "identify[], weigh[], and balanc[e]" in determining whether a duty exists).

Our courts have applied the rescue doctrine in many cases where the plaintiff was injured in attempting to rescue another person. See, e.g., Saltsman, 317 N.J. Super. at 241, 247 (patron sued recreational complex's manager for

injuries that resulted while attempting to break up a brawl between manager and another patron); Blackburn v. Broad St. Baptist Church, 305 N.J. Super. 541, 544–46 (App. Div. l997) (mother sued neighbor for injuries sustained in slip and fall while attempting to remove her three-year-old child from puddle on neighbor's property); Tornatore v. Selective Ins. Co. of Am., 302 N.J. Super. 244, 252 (App. Div. l997) (injured motorist entitled to uninsured motorist benefits after trying to help passengers on a bus involved in an accident after a passenger yelled "fire"); Burns, 281 N.J. Super. at 310 (injured motorist entitled to PIP benefits after rendering aid to driver trapped in a car following collision); Eyrich, 193 N.J. Super. at 256 (plaintiff had a viable cause of action for emotional distress suffered in attempted rescue of neighbor's child from fatal attack by a leopard at the circus).

Plaintiff concedes that no reported case from any New Jersey court has applied the rescue doctrine to support a cause of action brought by the rescuer of real or personal property against a defendant who, through his negligence, placed the property in peril. Citing several cases from other jurisdictions and other authority, plaintiff urges us to extend the doctrine to the facts presented here and reverse the grant of summary judgment. Some of that authority is persuasive and raises a legitimate question why the rescue doctrine should be

limited to the rescue of another human being, either the victim of another's negligence or, in very limited "particular circumstances," the one being rescued "who completely or partially created the peril that invited the rescue." Desir, 214 N.J. at 321.

For example, plaintiff cites that section of the Restatement (Second) of Torts, entitled "Danger Encountered in Effort to Save Person or Property," which states:

> It is not contributory negligence for a plaintiff to expose himself to danger in an effort to save himself or a third person, or the land or chattels of the plaintiff or a third person, from harm, unless the effort itself is an unreasonable one, or the plaintiff acts unreasonably in the course of it.
>
> [Restatement (Second) of Torts § 472 (Am. Law Inst. (1965)) (emphases added); see also id. at § 445 (stating rescuer's efforts to avert actor's negligent harm to "another's person, land, or chattels" is not a superseding cause. (emphasis added))]

According to one noted commentator, "[a]lthough there has been some disagreement, the great majority of the courts now apply the [rescue doctrine] to one who tries to rescue the property of another, even when under no duty to do so, and even though the property involved is that of the defendant." Prosser & Keeton on Torts, § 44 (5th ed. 1984).

A-3431-19

We cite just one example from a sister state in which the court specifically rejected the same argument defendants make in this case, i.e., that the rescue doctrine does not apply to "a rescuer of property, as opposed to a rescuer of a person in imminent peril." Estate of Newton ex rel. Newton v. McNew, 698 P.2d 835, 837 (Colo. App. 1984). There, the defendant and his employees were constructing a new home when a worker negligently caused a fire at the site. Id. at 836–37. The fire spread to structures on a nearby property, and the plaintiff's decedent, who lived next to that property, decided to assist the volunteer firefighters in extinguishing the fire. Id. at 837. He suffered a heart attack and died. Ibid.

The trial court allowed the case to proceed to a jury, which found in favor of the estate. Ibid. The appellate court affirmed, holding that the defendant owed a duty to exercise reasonable care to a rescuer of the property.

> While there is no established precedent in Colorado on whether the rescue doctrine applies to rescuers of property, the majority of states apply the rule that a duty is owed to one who tries to rescue the property of another. We are persuaded that it is the proper rule to be applied here.
>
> [Ibid. (citing Prosser & Keeton at § 44; Schmartz v. Harger, 171 A.2d 89 (Ct. Sup. Ct. 1961)).]

Defendants do not concede that a majority of states have applied the rescue doctrine to the rescue of imperiled property, but only that a majority of those states which have actually confronted the issue have so decided. Although the cases defendants cite in their brief are not particularly persuasive, some decisions have not applied the doctrine to attempts to rescue another's property. See, e.g., Glines v. Me. Cent. R.R., 52 A.2d 298, 300–01 (N.H. 1947) (denying recovery where the plaintiff was a "mere volunteer" attending to property in which he had no "legal interest"); Johnson v. Terminal R.R. Ass'n. of St. Louis, 8 S.W.2d 891, 893 (Mo. 1928) ("doctrine only applies where it appears that the act was necessary to save life or limb" (citations omitted)).

Defendants also argue that plaintiff relies on out-of-state cases in which the attempted rescue was of property with significant value or, like Estate of Newton, the circumstances posed a threat greater than mere injury to the property itself. Defendants note that the rescue doctrine only applies if the rescuer's effort is not unreasonable. See, e.g., Restatement (Second) of Torts, § 472 ("It is not contributory negligence for a plaintiff to expose himself to danger in an effort to save . . . the land or chattels of the plaintiff or a third person, from harm, unless the effort itself is an unreasonable one, or the plaintiff acts unreasonably in the course of it." (emphasis added)); id. at cmt. a ("[A] plaintiff

may run a greater risk to his own personal safety in a reasonable effort to save the life of a third person than he could run in order to save the animate or inanimate chattels of his neighbor or even of himself.").

Defendants also cite the Court's decision in McDougall v. Lamm, 211 N.J. 203 (2012), for additional support. There, the plaintiff was walking her dog by the defendant's home when the defendant's dog ran out and killed the plaintiff's dog. Id. at 208–09. The Court noted that Portee v. Jaffee, 84 N.J. 88 (1980), recognized a cause of action for emotional distress brought by those witnessing the traumatic death of another person with whom they shared a close familial relationship. McDougall, 211 N.J. at 207. The Court also said that although humans may share an emotional and enduring bond with their pets,

> there is no clear line of demarcation that we can draw in order to distinguish which pet owners would qualify for a Portee recovery and which would not. Unlike the plain and obvious emotional bond one has to the easily-identified universe of people that to date we have limited to parent, child, spouse or an individual with whom one shares a marital-like or intimate familial relationship, there is no manner in which to identify the class of pet owners or pets that would be included in such a cause of action.
>
> [Id. at 229.]

By analogy, defendants contend that applying the rescue doctrine to imperiled property of de minimis or sentimental value ultimately leads to absurd and untenable results.

While recognizing the merits of plaintiff's contention that foreclosing application of the rescue doctrine in all cases involving imperiled property seems out-of-step with the majority of our sister states, we also acknowledge the valid points raised by defendants that mitigate against its wholesale adoption of the doctrine in all circumstances involving imperiled property. As noted, the Court has never applied the doctrine to cases involving imperiled property.

"[O]ur role as an intermediate appellate court is to follow the dictates of the Supreme Court . . . ." RSB Lab. Servs., Inc. v. BSI, Corp., 368 N.J. Super. 540, 560 (App. Div. 2004). Our restraint is particularly warranted when it comes to the adoption of a "new cause of action," Tynan v. Curzi, 332 N.J. Super. 267, 277 (App. Div. 2000), or expansion of "established law." Rodriguez v. Cordasco, 279 N.J. Super. 396, 405 (App. Div. 1995). See also Proske v. St. Barnabas Med. Ctr., 313 N.J. Super. 311, 316 (App. Div. 1998) (declining to find damages for personal injuries based on a failure to perform a contractual term "[i]n the absence of [any] precedent, or . . . clear direction by dictum from

our Supreme Court" authorizing such action (quoting <u>Coyle v. Englander's</u>, 199 N.J. Super. 212, 226 (App. Div. 1985))).

We decline, therefore, plaintiff's invitation to extend the rescue doctrine under the facts of this case.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3431-19