221 N.J. Super. 340 (1987)
534 A.2d 448
STUYVESANT ASSOCIATES, PLAINTIFF,
v.
JOHN DOE (THE NAME BEING FICTITIOUS), DEFENDANT.
Superior Court of New Jersey, Law Division Essex County, Special Civil Part.
Decided October 5, 1987.
*341 Judith Musser for plaintiff (Geltzeiler, Mandel, Berezin & Feinstein, attorneys).
Arnold I. Budin for defendant (Budin, Greenman & Greenman, attorneys).
FAST, J.S.C.
This was a summary action for possession pursuant to N.J.S.A. 2A:18-61.1(c). Plaintiff-landlord served defendant-tenant with a notice to quit based on damage done to the landlord's premises, admittedly by defendant. Because of the sensitive facts involved, a fictitious name has been used for defendant.
The legal issue presented is the interpretation of the statutory requirement that the damage must have been:
... willfully or by reason of gross negligence caused or allowed.... [N.J.S.A. 2A:18-61.1(c)].
I have found no authority in New Jersey interpreting that statutory subsection.
*342 The facts material to this case are that the 41-year-old single defendant-tenant has been diagnosed as a schizophrenic. He has received treatment on and off for 15 years, and regularly since 1980. The treatment includes injections of prolixine decanate. The injections are scheduled for every other week. According to a psychiatrist who testified in behalf of defendant, if defendant misses an injection, within one week to ten days after missing the injection, defendant will again become psychotic. The consequence of the psychotic state is that defendant will become delusional; that is, he will lose contact with reality. While in that mental state, according to the psychiatrist, defendant is not responsible for (i.e., in control of) his own behavior, and does not act with either intent or malice; he doesn't realize right from wrong; all of his normal moral judgments are obliterated; he's "driven by inner voices" and cannot control himself.
Additional material facts are that defendant lives alone, consistent with the recommendation of the psychiatrist, in Irvington. The injections are scheduled to be given at a clinic, also in Irvington. And, according to the psychiatrist, if defendant misses a scheduled injection, the clinic, a social worker, therapist, and nurse have the duty to notify defendant's family  in this case, either his father or his stepbrother. The father currently lives in Maplewood, and the stepbrother lives in New York.
The psychiatrist opined that defendant, when in control of his mental faculties, knows the significance and likely consequence of getting or missing the injections when scheduled. However, he also testified that while well, a psychotic person might miss the injection because of a rationalization that he is then well, and therefore does not need the injection. The problem gradually erupts, because the normal mental condition subsides so gradually that the patient does not realize what is happening. As the psychiatrist stated it, the psychotic "hears the bells, but doesn't realize the consequences."
*343 The psychiatrist's testimony also included the opinion that the likelihood of personal injury as a result of the defendant's actions is "not very high," if defendant again becomes psychotic. He expressed no opinion with reference to the likelihood of defendant causing future property damage, while in a psychotic state. But probably more significant is that the psychiatrist testified that if defendant again becomes psychotic, defendant may confuse people and property.
Defendant missed one of his scheduled appointments for the injection. No specific reason was given for his having missed that appointment, nor why those follow-up procedures or people missed their follow-up with defendant. However, having missed it, he became psychotic and while in that delusional state, he admittedly damaged the landlord's premises. The damage was spray painting the stove, radiator, and windowsills in his own apartment, and, with a hammer, substantially damaging the door of the tenant downstairs.
Defendant contests his eviction, with the defense that the damage was not caused or allowed through acts or conduct that was either willful or grossly negligent.
This court rejects that defense in the facts presented, and finds that defendant did "cause or allow," through his willfulness or gross negligence, damage to the landlord's premises.
The Restatement, Torts, 2d § 283B, states that:
Unless the actor is a child, his insanity or other mental deficiency does not relieve the actor from liability for conduct which does not conform to the standard of a reasonable man under like circumstances. [at ____]
Although the Restatement section may relate to "simple" negligence, it a fortiori applies to gross negligence.
A reasonable person under the same circumstances as this defendant would be expected to get the injections as scheduled. Not having done so, he allowed himself to become psychotic, with the resulting damage done by his own hands. He is liable for the consequences of that conduct. Perhaps he did not *344 intend to tempt the fate of becoming psychotic, or intend the damage that resulted as a consequence, but it is obvious that he was the person who allowed the condition to result, with the consequent damage. This court finds that his having allowed the condition was the reasonably foreseeable consequence of his acts, and was grossly negligent, especially considering the damage done and the potential for greater damage or personal injury.
In using the word "willfully," the Legislature distinguished ["or"] it from the phrase "gross negligence."
In New Jersey, there is a distinction between gross negligence and willful and wanton misconduct. Gross negligence does not necessarily imply wilfullness, Siegel v. Saunders, 115 N.J.L. 539 (E. & A. 1935), and a distinction has been noted between them in some instances. [citations omitted] Cohen v. Press, 31 N.J. Super. 45, 50 (App.Div. 1954).
Willful and wanton misconduct is different in kind from negligence. [Tessler and Son, Inc. v. Sonitrol Sec. Systems, 203 N.J. Super. 477, 484 (App.Div. 1985); emphasis supplied]
But the difference between negligence and gross negligence is a matter of degree, and the differences cannot always be stated with mathematical precision. They must be determined by the finders of fact. Edwards v. Our Lady of Lourdes Hosp., 217 N.J. Super. 448, 462 (App.Div. 1987).
There are especially sound policy reasons for the Legislature to permit the eviction of a tenant who willfully or through gross negligence causes or allows damage. This court believes that it also must consider the potential liability of the landlord to other tenants for the potential damages or injuries that might be suffered by those others if defendant once again becomes psychotic. The liability of the landlord may be based on either "foreseeability" or common law concepts of "duty." Our highest state court has said:
Foreseeability of harm, not the fact of another's intervention, is the crucial factor in determining `whether a duty exists to take measures to guard against [criminal activity].' [Trentacost v. Brussel, 82 N.J. 214, 223 (1980) (quoting from Goldberg v. Newark Housing Auth., 38 N.J. 578 (1962))]
The actual language of Goldberg was:

*345 The question is not simply whether a criminal event is foreseeable, but whether a duty exists to take measures to guard against it. Whether a duty exists is ultimately a question of fairness. The inquiry involves a weighing of the relationship of the parties, the nature of the risk, and the public interest in the proposed solution. [38 N.J. at 583]
The question of fairness in this case requires that the issue be resolved in favor of the landlord. The relationship of the parties to this action is one where the landlord has the control to evict the tenant (through this action), but not otherwise. The day to day conduct of the tenant, when rational, is beyond the control of the landlord. Certainly the irrational conduct of the tenant is further beyond the control of the landlord. The landlord should not be placed in the precarious position of having to defend himself against damage or injuries caused by the irrational defendant. However, this court believes that in the exercise of foresight, another tenant injured or suffering damages at the hands of defendant would be justified in asserting that the landlord was the one in control, the one who could minimize the risk of injury or damage, by evicting defendant. The nature of the risk is immeasurable; it ranges from property damage to personal injury. As defendant's psychiatrist testified, defendant, while in a psychotic state, might not recognize the difference between property and people. In other words, defendant might be as likely to hit a person with a hammer as he did the neighbor's door.
The public interest in the proposed solution is to evict defendant. By balancing the interests, it is obvious that the burden to defendant is his alone; it is an individual burden, if that. However, the burden to those living in the same building as defendant is multiple. And no reason has been given why it should be the landlord's burden or risk.
Again, refering to the duty of the landlord, this court is mindful that "there has been a recent judicial trend toward expanding the scope of duty on the part of landlords with respect to tenant security." Braitman v. Overlook Terrace Corp., 68 N.J. 368, 374 (1975) (citing 2 Powell, Real Property *346 (Rohan ed. 1974), § 234[2][g] at 350). This court perceives that the trend is still with us. Perhaps the most recently published opinion of the New Jersey Supreme Court on the issue of the liability of a landlord is to an invitee of a tenant for the acts of a third person (another tenant). The case is Linebaugh v. Hyndman, 106 N.J. 556, (1987). In that case, the Supreme Court affirmed the reasoning of the Appellate Division, 213 N.J. Super. 117 (App.Div. 1986) which reversed the trial court (which granted summary judgment to defendant landlord). The Appellate Division said:
We hold that a landlord's responsibility to exercise reasonable care in the maintenance of common areas under his control encompasses a duty owed to his tenant's invitees to prevent injury from a vicious animal kept on the premises with his knowledge. [213 N.J. Super. at 121]
This court submits that no less responsibility exists from permitting a continued tenancy with an acknowledged and demonstrated potential for allowing damage or injury by an individual. The landlord should not be subject to that potential liability, nor the other tenants to that risk.
Judgment for possession will be granted to plaintiff.