**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2466-18T1

LEAH COLEMAN,

     Plaintiff-Appellant,

v.

SONIA MARTINEZ,

     Defendant-Respondent.

_____

Argued October 22, 2019 – Decided November 15, 2019

Before Judges Hoffman, Currier and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket No. L-0599-16.

Gary D. Ginsberg argued the cause for appellant (Ginsberg & O'Connor, PC, attorneys; Gary D. Ginsberg, on the briefs).

Ava M. Plakins (Bonner Kiernan Trebach & Crociata LLP) of the Pennsylvania bar, admitted pro hac vice, argued the cause for respondent (Bonner Kiernan Trebach & Crociata LLP, attorneys; Mark A. Lockett and Ava M. Plakins, on the brief).

PER CURIAM

Plaintiff Leah Coleman, a case manager at the New Jersey Department of Children and Families, Division of Child Protection and Permanency (Division) appeals from a January 23, 2019 Law Division order granting summary judgment and dismissing her complaint against defendant Sonia Martinez, a licensed social worker and therapist, employed by the Hispanic Family Center of Southern New Jersey (HFC).

On November 17, 2014, a mutual client of the parties, T.E.,[1] stabbed plaintiff twenty-three times at her Camden office lobby. Three weeks before the attack, T.E.'s relatives reported to plaintiff that T.E. was hearing voices and stated she felt compelled to follow the voices' commands. T.E. subsequently learned that plaintiff passed this information onto defendant and intended to inform the Family Court of same.

In granting defendant summary judgment, the Law Division judge found the attack was not foreseeable. On appeal, plaintiff argues that defendant deviated from the standard of care in failing to alert T.E.'s psychiatrist about the evidence of her psychosis, which would have led to the administration of antipsychotic medication, and prevented the stabbing. Because we conclude

---

[1] Due to the confidential medical information in the record, we use initials for T.E. to protect her privacy.

A-2466-18T1

plaintiff presented sufficient evidence to support a finding of particularized foreseeability, and therefore the imposition of a duty on defendant, we reverse the order of the trial court.

I.

We discern the following facts from the summary judgment record and view them in the light most favorable to plaintiff. See Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995).

In March 2013, T.E.'s five children were removed from her home after T.E. experienced a psychotic episode. While walking down a street, T.E. shouted that "aliens are all over the world" and "they control everything." T.E. also reported having command auditory hallucinations advising her to harm herself. She was involuntarily admitted to Camden County Health Services Center (CCHSC) following her psychotic episode, after an evaluation at Cooper University Medical Center. T.E. claimed the psychotic episode resulted from her first-time use of PCP.

During her hospitalization in March 2013, T.E. advised her attending psychiatrist at CCHSC that she had no prior psychiatric history and her legal history was not discussed. T.E.'s discharge diagnosis from CCHSC stated: "PCP

3

induced psychotic disorder with delusions, and hallucinations, onset during intoxication."

T.E. was discharged from CCHSC in late March 2013 on the condition that she follow-up with substance abuse counseling at HFC. T.E. complied, and she came under the care of a treatment team comprised of a psychiatrist, Dr. Basant Singh, and defendant. In October 2013, T.E. began therapy with defendant at HFC every three weeks. Defendant testified at her deposition that T.E. was a cooperative, pleasant, compliant, and intelligent patient. A Comprehensive Multi-Disciplinary Assessment completed by HFC staff classified T.E. as low risk for suicidal and homicidal tendencies.

An initial psychiatric evaluation of T.E. was performed on November 3, 2013 at HFC. A treatment plan was implemented for T.E. and provided that if she exhibited any signs of decompensation, she would be immediately referred to a psychiatrist. Defendant was included as part of T.E.'s treatment plan.

Over the course of the next several months, plaintiff asserts that T.E. began showing signs of decompensation and developing psychosis. For example, in early April 2014, T.E. was observed talking to herself during a group therapy session at HFC. She stood up and yelled, "I just saw Jesus." Defendant was made aware of T.E.'s outburst.

A-2466-18T1

In July 2014, the record reveals defendant observed T.E. in the HFC waiting room responding to outside stimuli. When confronted about her actions, T.E. stated she was probably using her cell phone but defendant noted T.E. did not have her cell phone in her hand and she was not wearing earphones. T.E. denied "hearing voices[,]" and she became paranoid about things she believed were being said about her that would jeopardize her regaining custody of her children.

In April 2014, Dr. Singh diagnosed T.E. with depressive disorder and prescribed Prozac for her. T.E. was evaluated again by Dr. Singh on July 5, 2014. No evidence of psychosis or instability was noted by Dr. Singh. The record shows that defendant informed plaintiff that T.E was compliant with respect to attending her individual therapy sessions and taking her medication. Defendant stated that at the time, she thought T.E. had no symptoms of psychosis and she was not a danger to anyone.

On August 15, 2014, defendant observed T.E. being distracted, and she appeared to be "hearing or trying to listen to something." Notwithstanding her observation, defendant opined that T.E. was ready to have unsupervised parenting time with her children.

A-2466-18T1

On October 28, 2014, plaintiff sent an email to defendant alerting her that T.E. told a family member she was hearing "commanding voices," and T.E. felt an obligation to act thereon. T.E. also advised her family member that she did not report this symptom to her psychiatrist or therapist. In response, defendant emailed plaintiff the next day and advised her that she would address this concern with T.E. during their next session.

On November 3, 2014, T.E. went to the Division's office to obtain a bus pass, encountered plaintiff in the hallway, and asked her if she was "sending her telepathic waves." In a November 7, 2014 progress note recorded by defendant, she documented informing T.E. that plaintiff advised defendant about T.E.'s family members reporting her hallucinations. T.E. became very upset upon learning of this, and denied having any command hallucinations. Later that day, T.E. called plaintiff and questioned why she would fabricate a story and tell defendant that T.E. was having hallucinations. Plaintiff advised T.E. that the Division took the position that she was incapable of parenting her children independently.

Four days before the stabbing, T.E. met with plaintiff and her supervisor, Donna Johnson, at the Division's office. T.E. appeared agitated and wanted Johnson to understand that the comment T.E. made to plaintiff regarding

"telepathic waves," did not reflect that T.E. was crazy, but rather, that she and plaintiff were on the same "wavelength." Defendant did not refer T.E. for a psychiatric evaluation but she advised T.E. to keep her scheduled appointment for November 18, 2014 with Dr. Singh.

On November 7, 2014, T.E. called the Division and denied plaintiff's report that she was hearing commanding voices. Less than a week later on November 13, 2014, T.E. visited the Division's office appearing agitated and disassociated. A few days later on November 17, 2014, while at her home, T.E. again experienced auditory and visual hallucinations, including hearing plaintiff's voice and seeing her face in the sky. The commanding voices heard by T.E. directed her to travel to the Division office.

On that same day, T.E. acted upon the commanding voices and went to the Division office with the intent to "stab [plaintiff] or her supervisor [Johnson]." T.E. "ran into [plaintiff] in the hallway" and aggressively stabbed her twenty-three times. Division employees tried to pull T.E. off of plaintiff, who was profusely bleeding.

At her deposition, defendant conceded that "looking back," T.E. exhibited signs of psychosis but at the time, defendant "did not believe that [T.E.] was a danger to herself or anybody else." Plaintiff's expert witness, Charles A. Dackis,

M.D., a psychiatrist, opined that defendant deviated from the standard of care by failing to immediately alert T.E.'s psychiatrist about the evidence of psychosis in T.E., and had defendant done so, he opined that T.E. would have been placed on antipsychotic medications and the stabbings would not have occurred.

Dr. Dackis further opined it was foreseeable T.E. would commit an act of violence upon plaintiff based upon T.E.'s history of assaults, her desire to regain custody of her children, and identification that plaintiff was the individual who reported T.E. hearing command voices. Dr. Dackis stated that defendant was in possession of a report by Dr. John O'Reardon noting T.E.'s 2007 and 2011 aggravated assault charges. The 2007 assault involved T.E. brandishing a knife during a dispute with her mother's landlord, and in 2010, T.E. struck her roommate on the face with a frying pan after the roommate broke T.E.'s windows. That incident also involved a knife. Dr. O'Reardon opined that T.E.'s psychosis endangered her children back in 2013.

The trial court granted summary judgment to defendant finding she owed no duty to plaintiff because there was a "lack of any direct threat communicated to the plaintiff - - or to the defendant regarding the plaintiff." Further, the trial court concluded that the facts "fail to rise to the level of that particularized

8

foreseeability" required for imposition of liability described by our Supreme Court in J.S. v. R.T.H., 155 N.J. 330, 342 (1998).

On appeal, plaintiff argues the trial court erred in granting summary judgment on the issue of particularized foreseeability because plaintiff produced substantial, credible evidence to support that claim. Defendant seeks affirmance.

II.

Because the question of duty was decided in favor of defendant on summary judgment, we must "accept[] as true all the evidence and favorable legitimate inferences that support" plaintiff's claim. J.S., 155 N.J. at 336. The standard governing our review is well stated in Frederick v. Smith, 416 N.J. Super. 594, 599 (App. Div. 2010).

> Whether a duty should be imposed is a matter of law, Kernan v. One Washington Park Urban Renewal Associates, 154 N.J. 437, 445 (1998); Arvanitis v. Hios, 307 N.J. Super. 577, 581 (App. Div. 1998), that poses "'a question of fairness'" involving "'a weighing of the relationship of the parties, the nature of the risk, and the public interest in the proposed solution.'" [internal citations and quotations omitted]. In reviewing a trial judge's determination that a duty does or does not arise in a particular situation, we are bound neither by the trial judge's interpretation of the law nor the judge's view of the legal consequences of the alleged facts. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

9

The duty analysis is "rather complex." J.S., 155 N.J. at 337. "[I]n its determination whether to impose a duty, [a court] must also consider the scope or boundaries of that duty." Id. at 339. Moreover, the court must recognize "the more fundamental question whether the plaintiff's interests are entitled to legal protection against defendant's conduct." Id. at 338 (citation omitted). That assessment must include the relationship between the parties, defendant's "responsibility for conditions creating the risk of harm[,]" and whether the "defendant had sufficient control, opportunity, and ability to have avoided the risk of harm." Id. at 339 (citation omitted).

With respect to the nature of the risk, both the "foreseeability and severity" of the "underlying risk of harm" and "the opportunity and ability to exercise care to prevent the harm" are considered. Id. at 337. To that end, "[t]he ability to foresee injury to a potential plaintiff is crucial in determining whether a duty should be imposed." Id. at 338 (internal quotations and citation omitted). The defendant must have actual knowledge or awareness of the risk of injury or constructive knowledge or awareness, which may be imputed when the defendant is "in a position to discover the risk of harm." Ibid. (internal quotations and citation omitted).

To sustain a cause of action for negligence, a plaintiff must establish four elements: "(1) [a] duty of care, (2) [a] breach of [that] duty, (3) proximate cause, and (4) actual damages[.]" Polzo v. Cty. of Essex, 196 N.J. 569, 584 (2008) (alterations in original) (quoting Weinberg v. Dinger, 106 N.J. 469, 484 (1987)). A "plaintiff bears the burden of establishing those elements 'by some competent proof . . . .'" Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 406 (2014) (citation omitted) (quoting Overby v. Union Laundry Co., 28 N.J. Super. 100, 104 (App. Div. 1953)).

The assault on plaintiff involved a violent physical attack. Indeed, plaintiff sustained "a hemothorax, pneumothorax, hemorrhagic shock, acute blood loss anemia," major depressive disorder, and post-traumatic stress disorder from the assault. Our Court has recognized the clear public policy to prevent a harm when it is foreseeable. For instance, in recognizing a duty on the part of a spouse "to take reasonable steps to prevent or warn of the harm" posed by his or her spouse's risk of sexually abusing children, id. at 350, the Court limited the duty to cases in which a heightened standard of foreseeability is met—cases where the defendant had "particular knowledge or special reason to know that a particular plaintiff or identifiable class of plaintiffs would suffer a particular type of injury." Id. at 342 (internal quotations and citation omitted).

11

Determining the scope of tort liability presents a question of law. Kelly v. Gwinnell, 96 N.J. 538, 552 (1984). "The question of whether a duty to exercise reasonable care to avoid the risk of harm to another exists is one of fairness and policy that implicates many factors." Carvalho v. Toll Bros. & Developers, 143 N.J. 565, 572 (1996). The inquiry "turns on whether the imposition of such a duty satisfies an abiding sense of basic fairness under all of the circumstances in light of considerations of public policy." Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 439 (1993).

"Foreseeability of the risk of harm is the foundational element in the determination of whether a duty exists." J.S., 155 N.J. at 337. "Foreseeability is significant in the assessment of a duty of care to another; moreover, it has a dual role in the analysis of tort responsibility." Olivo v. Owens-Ill., Inc., 186 N.J. 394, 402 (2006). In the duty of care analysis, foreseeability "is based on the defendant's knowledge of the risk of injury and is susceptible to objective analysis." J.S., 155 N.J. at 338. That knowledge may arise from actual awareness, Carvalho, 143 N.J. at 576, or knowledge may be constructive when the defendant "was in a position to foresee and discover the risk of harm . . . ." Id. at 578.

"In some cases where the nature of the risk or the extent of harm is difficult to ascertain, foreseeability may require that the defendant" know a certain class of reasonably foreseeable persons would likely suffer injury. J.S., 155 N.J. at 338; see also C.W. v. Cooper Health Sys., 388 N.J. Super. 42, 62 (App. Div. 2006); Safer v. Estate of Pack, 291 N.J. Super. 619, 626-27 (App. Div. 1996). "Also included in the analysis is 'an assessment of the defendant's "responsibility for conditions creating the risk of harm" and an analysis of whether the defendant had sufficient control, opportunity, and ability to have avoided the risk of harm.'" Podias v. Mairs, 394 N.J. Super. 338, 350 (App. Div. 2007) (quoting J.S., 155 N.J. at 339).

In J.S., our Court held:

> In determining whether a duty is to be imposed, courts must engage in a rather complex analysis that weighs and balances several, related factors, including the nature of the underlying risk of harm, that is, its foreseeability and severity, the opportunity and ability to exercise care to prevent the harm, the comparative interests of, and the relationships between or among, the parties, and, ultimately, based on considerations of public policy and fairness, the societal interest in the proposed solution.
>
> [Id. at 337.]

Measured against J.S.'s standard of particularized foreseeability, the evidence in this case is adequate to warrant imposition of a duty on defendant.

13

The record indicates defendant was made aware of T.E.'s command auditory hallucinations that involved violence contemplated against plaintiff, and T.E.'s history of psychosis, assaults with weapons, and need for monitoring in the event of her decompensation. Armed with all of this information, as her therapist and as a member of T.E.'s treatment team, defendant had a duty to warn plaintiff about T.E.'s potential violent behavior. Defendant was made aware that T.E. was hiding the fact that she was hearing voices because she wanted to resume custody of her children. Also, defendant identified plaintiff as the source revealing T.E.'s hallucinations, thereby contributing to the foreseeability of harm.

In light of these specific circumstances demonstrating defendant had a particularized foreseeability that T.E. could act violently against plaintiff, we conclude it was a misapplication of the law to grant summary judgment to defendant. The most favorable inference available to plaintiff is that defendant should have known T.E. was experiencing a psychosis on October 28, 2014, delayed seeing her until November 7, 2014, and failed to immediately report T.E.'s indicators of psychosis to her treating psychiatrist. It remains plaintiff's burden to establish the remaining elements of her negligence claim—whether

defendant breached her duty, and whether that breach was a proximate cause of plaintiff's injuries and damages.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2466-18T1