**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2489-22

PHILIP POPPER and
ADRIENNE POPPER,
husband/wife,

     Plaintiffs-Appellants,

v.

INDIAN SPRING GOLF
ASSOCIATION, d/b/a
INDIAN SPRING GOLF
COURSE, and/or INDIAN SPRING
COUNTRY CLUB, EVESHAM
GOLF MANAGEMENT, LLC,
and TOWNSHIP OF EVESHAM,

     Defendants,

and

MOORESTOWN VISITING
NURSE ASSOCIATION, INC.,

     Defendant-Respondent.

_____

Submitted February 26, 2024 – Decided March 7, 2024

Before Judges Mawla and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Docket No. L-1363-20.

Daniel Lloyd Hessel (Golkow Hessel, LLC), attorney for appellants.

Lewis Brisbois Bisgaard & Smith, LLP, attorneys for respondent (Malinda Ann Miller and Peter A. D'Arcangelo, on the brief).

PER CURIAM

Plaintiffs Philip Popper and Adrienne Popper appeal from the Law Division's order granting summary judgment in favor of defendant Moorestown Visiting Nurse Association, Inc. ("MVNA"). Because the record shows there are genuine issues of material fact that must be decided by a jury, we reverse and remand for the reasons expressed in this opinion.

Philip Popper was injured when he fell from a golf cart during a charity golf outing. His employer was a sponsor of the outing. Popper participated in the outing as a representative of his employer, along with two of his work colleagues, Katie Knook and Jessica Curtis. Jeff DeFrehn participated in the

A-2489-22

outing as a representative of MVNA.[1]  Popper, Knook, Curtis, and DeFrehn were grouped together as a foursome.

At the start of the outing, Popper and DeFrehn were paired together in a two-person golf cart with DeFrehn driving.  Knook and Curtis initially rode in a second golf cart, which Curtis drove.  At some point, the golfers began switching carts.  There are conflicting accounts of the accident and the events immediately preceding the accident.  Popper does not remember the accident or anything else from the day of the outing because of his injuries.

According to Knook, the group played six or seven holes before the accident.  She does not remember what hole they were playing when Popper fell.[2]  Knook recalls she sat in the passenger seat of the cart DeFrehn was driving and they were preparing to drive "from the tee area to the actual hole" to retrieve a ball.  According to Knook, "before [they] went to get the ball [Popper] stood on the side of the cart, [because she] was . . . sitting in the passenger seat."  Popper was standing "[o]n the passenger side.  His feet were on . . . the step to go into the cart, and his hands were . . . holding onto the top of the cart."  Knook

---

[1]  MVNA concedes DeFrehn was acting within the scope of his employment at the time of the event.  The question of MVNA's liability for DeFrehn's conduct is not before us.

[2]  The outing was a "scramble," and the group did not start on the first hole.

A-2489-22

and DeFrehn "suggested several times that [Popper] go sit in the other cart . . . before [DeFrehn] started to drive." Popper responded that "he was fine." Curtis was driving the other cart, which was approximately fifteen to twenty feet away at the time.

They were driving for approximately thirty to forty-five seconds before Popper fell. Knook testified DeFrehn turned from the blacktop cart path to drive onto the fairway and drove through a grassy area of bumpy terrain between the cart path and the fairway. "[I]t was a little bumpy to get through to the fairway, the way it would [be] over any non-smooth surface."

Knook recalls the cart was moving when Popper fell. "[DeFrehn] was not going very slow[,]" and the cart "was in full motion." Knook testified DeFrehn had the gas pedal fully depressed at the time and was driving the cart "about as fast as it would go." According to Knook, "[Popper] stood on the side of the cart – he was on there. [They] drove for a little bit, and then as [they] got closer to the ball, [she] remember[s] [Popper] stating, I'm going to fall and within that same moment kind of tumbled back off the cart."

Although Knook previously told a workers' compensation insurance investigator the cart hit a tree root that caused Popper to fall, she testified at her deposition the cart did not hit anything immediately prior to the accident. She

A-2489-22

explained her statement to the investigator was "not as accurate" and "vague" because she did not want Popper to be declined benefits. She added, however, she "still fe[lt] that [they] could have gone over that." Knook testified DeFrehn did not make any sudden movements of the cart, slam on the brakes, or turn immediately before Popper fell. Knook did not see Popper holding a beer bottle when he was standing on the cart.

DeFrehn testified that before the accident the group played approximately nine holes. He did not recall what hole they were playing when Popper fell. Immediately before the accident, he and Popper hit their second shots on the hole from the rough off the right side of the fairway. Popper hit his second shot out of play and DeFrehn hit his onto the fairway. Before they started to drive toward DeFrehn's ball, the beer cart stopped nearby. Popper and Knook went to the beer cart while DeFrehn stayed in his cart and answered emails.

DeFrehn testified: "[Knook] came up and she sat in the cart and I said . . . are you ready and she said yeah. I said all right. So I put my phone in the compartment and I started moving the cart to go towards the ball." DeFrehn continued, "[a]s I was moving the cart, [Popper] yell[ed] I'm going to fall. At that time I took my foot off the gas or off the pedal and I was moving slow at that point, we just started out and when [Popper] yelled . . . he startled me."

 A-2489-22

DeFrehn testified "as [he] looked over to the right [Popper] was falling forward . . . before [he] even hit the ground [the cart] was stopped."  As DeFrehn "was getting out of the cart, [he] s[aw] a bottle of Budweiser had rolled up, came out of [Popper's] hand and rolled up and was spinning around on the . . . path in front of [them]."

DeFrehn testified he did not know Popper was standing on the cart and did not hear Knook tell Popper to sit in the other cart.  He believed Popper was in the other cart.  DeFrehn testified Popper was standing on the passenger side wheel well.  According to DeFrehn, Popper fell ten to fifteen seconds after he started to drive, and the cart only moved ten to fifteen feet in the rough before Popper fell.  DeFrehn testified he did not have the gas pedal fully depressed.

DeFrehn conceded Popper stood on the back of his cart at one point earlier in the round and DeFrehn asked him not to do that but nevertheless drove the cart with Popper standing on the back.  DeFrehn testified it would be unsafe to operate a two-person golf cart with more than two people on it "[b]ecause you[ a]re not sitting down, you[ a]re standing up."

Curtis testified she saw Popper standing on DeFrehn's cart before the accident and "[they] were saying, get in the cart with [her], that the seat was open."  According to Curtis, they asked Popper "what are you doing?  Why are

6

you on the side of the cart? . . . [G]et in the cart so we can go." Her testimony continued:

> Q: Who was telling him that?
>
> A: I mean, it was all of us . . . [in] the foursome, [Knook] and I. I can't recall if [DeFrehn] was telling him, but I recall that we were saying . . . come on [Popper]. We need to go . . . .
>
> Q: And was [Knook] sitting in . . . De[F]rehn's cart when you and [Knook] were telling [Popper] to get into your cart?
>
> A: I do believe so, yes.
>
> Q: Did . . . De[F]rehn say anything to [Popper] at that time?
>
> A: I can[no]t recall with exact clarity.
>
> I think we were all saying . . . come on [Popper]. We [have] to go, . . . get in the cart, but I can[no]t be certain."

Curtis was in front of DeFrehn's cart when Popper fell, and she did not see the accident.

Popper sustained serious injuries including facial fractures, acute respiratory failure with hypoxia, a fractured rib, dysphagia, a tracheostomy, and post-concussion syndrome. Plaintiffs filed this action against MVNA alleging MVNA is vicariously liable for the negligence of its employee, DeFrehn.

7

Following the completion of discovery, MVNA moved for summary judgment. On January 20, 2023, the court heard oral argument and granted MVNA's motion in an oral opinion. After oral argument, the court requested supplemental briefing. On March 27, 2023, the court entered an order granting summary judgment supported by a supplemental written opinion.

In its January 20 oral opinion, the court found plaintiffs failed to produce any evidence of breach of duty or causation. The court rejected plaintiffs' argument that operating the golf cart with someone standing on the side is evidence of negligence. It held "there has to be some evidence that the golf cart was operated negligently" while it was moving, and plaintiffs failed to "establish . . . [a] link . . . between [Popper] falling off and however . . . DeFrehn was operating the golf cart." "Popper could have fallen off the golf cart if it were not even . . . in motion."

The court found "there is no evidence that the operation of the golf cart was the reason [Popper] fell" and no evidence "to support the mere fact that a golf cart operated while someone [is] standing on the back is, itself, negligent." The court noted, "[a]ll they can say is that . . . Popper was . . . standing on the back. Assuming the best case, . . . DeFrehn wouldn't have driven if he knew

[Popper] was on the back. . . . DeFrehn actually knew he was on the back and he made a bad decision to drive when . . . Popper was on the back."

In its March 27 written opinion, the court found "DeFrehn's testimony that he was not aware . . . Popper was standing on the rear of the cart when he began to drive is not inconsistent with [Knook's] testimony that before he stood on the rear . . . Popper had been asked to sit in a different golf cart. . . . Knook's testimony is not probative of what . . . DeFrehn knew about . . . Popper's whereabouts when he began to drive." The court also found "Knook's testimony sheds no light on causation."

The court found "the question of whether . . . DeFrehn slowed down or maintained his speed is an irrelevancy. There is no evidence suggesting that anything . . . DeFrehn did or did not do proximately caused . . . Popper to fall." The court continued, "[n]othing in the record suggests that any failure to slow down bears any connection to . . . Popper's injury. It could just as easily be argued that slowing down caused the fall."

On appeal, plaintiffs argue the court erred by finding no reasonable jury could conclude DeFrehn was negligent or that his negligence caused Popper's injuries. More particularly, plaintiffs allege it was negligent to operate the golf cart with Popper standing on the side, and whether DeFrehn knew Popper was

standing on the cart is a genuine issue of material fact. In addition, plaintiffs contend, based primarily on Knook's testimony, a reasonable jury could find DeFrehn operated the golf cart in a negligent manner while it was moving and caused Popper's injuries.

We review a grant of summary judgment de novo, using the same standard that governed the trial court's decision. Samolyk v. Berthe, 251 N.J. 73, 78 (2022). We owe no special deference to the court's legal analysis. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018) (quoting Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co., 224 N.J. 189, 199 (2016)). Summary judgment will be granted when "the competent evidential materials submitted by the parties," viewed in the light most favorable to the non-moving party, show that there are no "genuine issues of material fact and . . . the moving party is entitled to summary judgment as a matter of law." Grande v. Saint Clare's Health Sys., 230 N.J. 1, 23-24 (2017) (quoting Bhagat v. Bhagat, 217 N.J. 22, 38 (2014)).

"An issue of material fact is 'genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact.'" Grande, 230 N.J. at 24

(quoting Bhagat, 217 N.J. at 38). Determinations of credibility are "to be made by a jury and not the judge." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). "[W]hen there are conflicting versions of the facts that would permit a rational jury to choose either version, the resolution of that conflict requires a determination of which version is more credible. Such a factual dispute should be decided by a jury . . . ." Suarez v. E. Intern. College, 428 N.J. Super. 10, 27 (App. Div. 2012).

To defeat a motion for summary judgment in a negligence action, a plaintiff must present competent evidence of a duty of care owed, breach of that duty, causation, and damages. Siddons v. Cook, 382 N.J. Super. 1, 13 (App. Div. 2005). Here, the court found plaintiffs failed to offer any evidence of breach of a duty of care or causation.

A person breaches a duty of care owed when the person's "conduct . . . falls below a standard recognized by the law as essential to the protection of others from unreasonable risks of harm." Marshall v. Klebanov, 378 N.J. Super. 371, 378 (App. Div. 2005) (quoting Sanzari v. Rosenfeld, 34 N.J. 128, 134 (1961)). The question is "'whether [a] reasonably prudent person at the time and place should recognize and foresee an unreasonable risk or likelihood of harm

11

or danger to others' by his [or her] conduct." Est. of Narleski v. Gomes, 244 N.J. 199, 226 (2020) (quoting Kelly v. Gwinnell, 96 N.J. 538, 543 (1984)).

In the context of negligent entrustment, we have concluded there is no "conceptual difference" between a golf cart and a motor vehicle. McKeown v. Am. Golf Corp., 462 N.J. Super. 339, 343-44 (App. Div. 2020). An operator of a golf cart, therefore, is subject to the same duty of care imposed on the operator of a motor vehicle. The driver of a motor vehicle has a duty to exercise reasonable care for the safety of passengers. Wlasiuk v. McElwee, 334 N.J. Super. 661, 667 (App. Div. 2000). The question in this case is whether DeFrehn breached that duty of care and caused Popper's injuries.

"Although the existence of a duty is a question of law, whether the duty was breached is a question of fact." Jerkins v. Anderson, 191 N.J. 285, 305 (2007) (citing Anderson v. Sammy Redd & Assocs., 278 N.J. Super. 50, 56 (App. Div. 1994)). The question of whether a duty was breached is a matter "peculiarly within the competence of a jury." Arvanitis v. Hios, 307 N.J. Super. 577, 582 (App. Div. 1998) (citing Anderson, 278 N.J. Super. at 56). "Questions of proper speed and control of a motor vehicle are preeminently questions of fact for the jury to decide." Universal Underwriters Grp. v. Heibel, 386 N.J. Super. 307, 321 (App. Div. 2006).

12

Likewise, causation is ordinarily a question for the jury except "in the highly extraordinary case in which reasonable minds could not differ on whether that issue has been established." Fleuhr v. City of Cape May, 159 N.J. 532, 543 (1999). To establish causation, a plaintiff must show by competent evidence that the breach of duty was a substantial contributing factor in producing the alleged damages. Scafidi v. Seiler, 119 N.J. 93, 104-05 (1990).

The evidence in the record, when viewed in the light most favorable to plaintiffs, is sufficient to permit a rational factfinder to conclude DeFrehn breached a duty of care owed to Popper and caused his injuries. Whether DeFrehn knew Popper was standing on the cart before he began to drive is plainly a question for the jury. According to Knook, Popper stood on the passenger side where she was sitting with his feet on "the step to get into the cart," which means Popper was standing within a few feet of DeFrehn who was sitting next to Knook.

Knook testified she and DeFrehn "suggested several times that [Popper] go sit in the other cart . . . before [DeFrehn] started to drive." Curtis testified similarly that at least she and Knook were telling Popper to get in the cart with Curtis while Knook was sitting next to DeFrehn and Curtis was in the other cart. A reasonable jury could conclude, based on the testimony of Knook and Curtis,

13

that DeFrehn was aware Popper was standing on the cart before he began to drive. Whether to believe DeFrehn's testimony over that of Knook and Curtis is for the jury to decide, not the court.

If the jury concludes DeFrehn knew Popper was standing on the cart, it could also find DeFrehn breached a duty of care owed to Popper and caused his injuries. According to Knook, DeFrehn was driving the cart with the gas pedal fully depressed "about as fast as [the cart] would go" and turned from the blacktop cart path through a grassy area of "bumpy" terrain before Popper fell. Knook also previously told an insurance investigator the cart hit a tree root causing Popper to fall. Although she testified at her deposition that statement was "not as accurate" and "vague," she also testified she "still [felt] that [they] could have gone over that."

If the jury finds Knook credible, it could determine DeFrehn failed to exercise reasonable care for the safety of his passengers, including Popper, by driving "about as fast as the cart would go" over "bumpy" terrain and possibly over a tree root. Questions of credibility and factual disputes such as these are to be resolved by a jury, not on a motion for summary judgment.

A jury could also determine driving the cart in the first place with a person standing on the side holding onto the roof was a breach of duty. DeFrehn

14

acknowledged it would not be safe to do so. The court also opined it was a "bad idea." One reason doing so would be a "bad idea" is because a person standing on the side of a golf cart could be injured any number of ways, including by falling from the cart while it is in motion. If the jury determines DeFrehn knew Popper was standing on the cart, it could find DeFrehn breached his duty of care by operating the cart.

As to causation, the evidence in the record is sufficient for a reasonable jury to conclude DeFrehn's breach of duty was a substantial contributing factor in producing Popper's injuries. If the jury concludes DeFrehn failed to exercise reasonable care in the operation of the golf cart, it could also conclude that his breach of duty resulted in Popper's fall and injuries. The court erred in determining that plaintiffs cannot prove causation because Popper cannot say precisely how he fell. A jury can determine causation based on direct or circumstantial evidence. A plaintiff does not need to establish precisely how an accident happened to prove causation. A jury can determine causation based upon deductions or logical conclusions from the direct evidence in the case. Causation is ordinarily a question for the jury unless "reasonable minds could not differ" on whether that issue has been established. Fleuhr, 159 N.J. at 543. Under the facts of this case, causation is a question for the jury.

MVNA's contention, without citation to any authority, that plaintiffs were required to offer expert testimony on the proper operation of a golf cart is not persuasive. The operation of a golf cart, like the operation of a motor vehicle, is a matter within the ken of the average juror. Expert testimony is not necessary to assist the jury in understanding evidence relating to the operation of a golf cart.

Because there exist genuine issues of material fact that must be resolved by a jury, we are constrained to reverse the entry of summary judgment in favor of MVNA. To the extent we have not addressed any remaining arguments, it is because they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2489-22